UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAUL C. BOLIN, | ) | Case No. CIV. F-99-5279-AWI-P |
| | ) | |
| Petitioner, | ) | |
| | ) | <u>Death</u> <u>Penalty</u> <u>Case</u> |
| vs. | ) | |
| | ) | Order Granting in Part and |
| ROBERT J. AYERS, Jr., Acting | ) | Denying in Part Petitioner's |
| Warden of San Quentin State | ) | Motion for Discovery |
| Prison, | ) | (Doc No. 166) |
| | ) | |
| Respondent. | ) | |

Petitioner Paul C. Bolin ("Bolin") filed a motion June 12, 2006, seeking pre-briefing discovery.  Respondent Robert J. Ayers, Jr. ("the State") opposes the motion.  This matter came on for hearing on August 21, 2006, the Honorable Anthony W. Ishii presiding.  Bolin was represented by his appointed counsel Assistant Federal Defender Allison Claire.  The State was represented by Deputy Attorney General Rachelle Newcomb.  The hearing was conducted to attempt to resolve disputed issues from Bolin's discovery request which were not amenable to informal discovery.

Discovery in federal habeas litigation is regulated by

1    Rule 6 of the Rules Governing § 2254 Cases.  Unlike regular civil

2    actions, discovery in federal habeas actions can only be

3    conducted with permission of court and permission is only granted

4    for a showing of "good cause."  In this context, good cause has

5    two primary elements.  The first is that the material sought is

6    not available by informal means.  The second relates to a strict

7    construction of relevance.  That is, discoverable information in

8    habeas proceedings requires a closer nexus of proof to presented

9    claims than is required in regular civil actions.  Specifically,

10   with respect to Bolin, for specified discovery to be authorized,

11   he must make a showing that the purpose of the discovery is to

12   establish entitlement to relief.  *See Jones v. Wood*, 114 F.3d

13   1002, 1009 (9th Cir. 1997) (discovery is appropriate to permit

14   petitioner to establish entitlement to relief); *Bracy v. Gramley*,

15   520 U.S. 899, 908-09 (1997) (discovery must be made available

16   where specific allegations show reason to believe petitioner

17   would be entitled to relief if specific facts are developed);

18   *Harris v. Nelson*, 394 U.S. 286, 300 (1969) (discovery is

19   available to petitioner, who upon specific allegations, convinces

20   the court he may, if the facts are developed, be able to

21   demonstrate that he is entitled to relief).

22       The expansive construction of relevance in civil cases, to

23   embrace all information "reasonably calculated to lead to the

24   discovery of admissible evidence" specified in Federal rule of

25   Civil Procedure 26(b)(1), is not appropriate in habeas corpus

26   cases.  Habeas corpus is not a proceeding to *learn* facts.  *See*

99dp5279.OreDiscovery.wpd                    **2**

1   *e.g., Harris*, 394 U.S. at 297 (broad-ranging preliminary inquiry

2   is neither necessary nor appropriate in the context of a habeas

3   proceeding); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir.

4   1999) (habeas corpus "was never meant to be a fishing expedition

5   for habeas petitioners to 'explore their case in search of its

6   existence'").   Conversely, the discovery standard is more lenient

7   than the standard to justify an evidentiary hearing.   To obtain

8   discovery, a petitioner must show that if the facts are developed

9   he *may* be able to demonstrate he is entitled to relief.   *Bracy*,

10   520 U.S. at 909.   In order to obtain an evidentiary hearing, a

11   petitioner must show that if the facts are proved, he *would* be

12   entitled to relief.   *Jones v. Wood*, 114 F.3d 1002, 1010 (9th Cir.

13   1997).

14      With respect to the State, case authority construing Rule 6

15   of the § 2254 Rules appears limited to issuance of protective

16   orders for ordered disclosure of attorney-client materials

17   relevant to ineffective assistance of counsel claims. In *Bittaker*

18   *v. Woodford*, 331 F.3d 715 (9th Cir. 2003) the Ninth Circuit

19   instructs:

20        If a district court exercises its discretion to allow
        such discovery "to the extent that . . . good cause

21        [is] shown," it must ensure compliance with the
        fairness principle.   To that end, it must enter

22        appropriate orders clearly delineating the contours of
        the limited waiver before the commencement of

23        discovery, and strictly police those limits thereafter.

24   *Id*. at 728.   Thus, under *Bittaker*, a protective order is

25   available to limit the waiver as necessary to litigate a claim of

26   ineffective assistance of counsel in federal court.   *See id*. at

721-22.

**A.   Open-File Review of the Kern County DA's Case File in *People v. Bolin*.**

In preparation for briefing on the ineffective assistance of counsel and *Brady* claims, Bolin attempted to reconstruct the materials in the possession of trial counsel, but due to intermingling of records by prior counsel this has proved impossible.  On May 22, 2006, the Kern County District Attorney's Office produced 380 pages of documents, but there was no consecutive numbering and many numbered pages were missing. Bolin seeks open-file review of the prosecutor's file.

The State opposes open-file review, claiming that the requested discovery will not shed light on when trial counsel received discovery; that disclosure has already been made; that Bolin has not asked prior counsel for information about the files; that Bolin <u>must</u> disclose efforts he made to ascertain this information; and that the State is not required to help Bolin organize his files.

No evidence has been presented that Bolin's current counsel is at fault for the state of documents in their possession.  The open-file review will not be overly burdensome on the Kern County District Attorney's Office.  Any assertion that documents are privileged or otherwise non-discoverable should be made pursuant to Federal Rules of Civil Procedure, Rule 26(b)(5).  Bolin's motion for open-file review of the Kern County District Attorney's file in *People v. Bolin* is GRANTED.

**B.    Discovery Concerning *Batson* Claims.**

Bolin seeks background materials regarding potential jurors, documents regarding the Kern County District Attorney's jury selection in this case, and general policies and procedure of the Kern County District Attorney's office regarding jury selection strategy.  Bolin notes the prosecutor exercised peremptory challenges against three Hispanic surnamed prospective jurors with no objection from trial counsel or the trial court.

The State argues the merits of the claim, pointing out that Bolin's panel did have a juror with an Hispanic last name, Medina, and arguing that Bolin cannot prevail because the bare record does not disclose whether the stricken prospective juror was actually Hispanic or just had an Hispanic surname.

Establishment of a prima facie case of discrimination only requires that a defendant proffer facts that give "rise to an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162, 125 S. Ct. 2410, 2416 (2005).  Once the defendant produces evidence sufficient to permit the trial judge to draw an inference of discrimination, the burden shifts to the prosecutor to establish a race-neutral reason for the strike.   *Id.*, 545 U.S. 162, 125 S. Ct. at 2417-19.  Contrary to the State's argument, Hispanic surnames are used to establish whether a prima facie case exists. *See e.g., United States v. Artero*, 121 F.3d 1256, 1261 (9th Cir. 1997).  The striking of three jurors with Hispanic surnames is sufficient to show good cause for the requested discovery.  Bolin's request for discovery is GRANTED.

1 | **C.    Discovery Related to *Brady* Claims.**

2 |     **1.    Discovery Related to Eloy Ramirez.**

3 |     Ramirez testified that Bolin shot Vance Huffstuttler outside
4 | the cabin in cold blood.  Bolin claims he shot Huffstuttler in
5 | the cabin after a fight, and hence the homicide was not first
6 | degree murder, but voluntary manslaughter, at most.  Ramirez
7 | originally was arrested as an accomplice.  After he spoke to
8 | authorities, he was released and no charges were brought – even
9 | for cultivating marijuana.  Bolin believes and has alleged that
10 | Ramirez was given inducements for false testimony against Bolin.
11 | He seeks Ramirez's criminal records; interviews between Ramirez
12 | and authorities; contacts between authorities and Ramirez's
13 | cousin/lawyer (who negotiated Ramirez's release from custody),
14 | Ramirez's girlfriend Patricia Islas, or any other person
15 | regarding Ramirez's role as a witness; investigation records
16 | concerning marijuana cultivation or drug trafficking operation;
17 | and documents referencing Ramirez in connection with Jerry
18 | Halfacre, Vance Huffstuttler, Rebecca Ward (Huffstuttler's
19 | girlfriend), Brent Wilson, Ulysses "Chief" Williams, Steve Mincy,
20 | or Jim Wilson.

21 |     The State argues the merits, claiming Bolin cannot prevail
22 | because the police only arrested Ramirez to secure his
23 | cooperation, not because they thought he was guilty, and that
24 | Bolin already knew about the dropped charges at trial.  Also, the
25 | State argues that new facts developed from this discovery would
26 | be unexhausted.

99dp5279.OreDiscovery.wpd                     **6**

1    The documents sought are relevant to Bolin's claim of an

2 undisclosed inducement given to Ramirez in return for his

3 testimony, or for impeachment.  Bolin's request for discovery

4 related to Eloy Ramirez is GRANTED.

5    **2.   Discovery Related to Jerry Halfacre.**

6    Halfacre was the boyfriend of Bolin's daughter Paula and the

7 father of Bolin's granddaughter, Ashley.  A letter Halfacre

8 received from Bolin threatening him for mistreating Paula and

9 Ashley was admitted during penalty proceedings as aggravating

10 evidence of acts or threats of acts of violence.  The letter was

11 admitted through Halfacre's Los Angeles probation officer.

12 Halfacre did not testify.  Shortly after Bolin's trial, Halfacre

13 was released from probation.  Bolin seeks all criminal records

14 pertaining to Halfacre from the District Attorney's files,

15 documents reflecting interviews between Halfacre and authorities,

16 and any documents reflecting communications between Kern County

17 authorities and Halfacre's probation officer.

18    The State argues the merits claiming Bolin has not shown

19 Halfacre's release from probation was connected to Bolin's case,

20 and that the information requested would not impeach Halfacre.

21 Also, the State, quoting the California Supreme Court opinion,

22 argues that the letter was not prejudicial to Bolin's penalty

23 proceedings in any event.

24    Halfacre did not testify, so there was nothing to impeach.

25 Bolin argued in his reply that the letter was significant

26 penalty-phase evidence against him (notwithstanding the

1  California Supreme Court's finding to the contrary) and that he

2  needs the impeachment evidence to disprove that the letter

3  constituted a threat or that Halfacre perceived it as a threat.

4  This argument does not show relevance to the *Brady* claim.   The

5  prosecutor could not have committed misconduct by failing to turn

6  over information about a non-testifying person.   Bolin's request

7  for discovery related to Jerry Halfacre is DENIED.

8      **3.   Discovery Related to Jim Wilson.**

9      Bolin contends Wilson talked to authorities when he returned

10 to the crime scene to collect his truck and they coached him to

11 testify consistent with Ramirez's testimony that Huffstuttler was

12 shot outside the cabin in cold-blood.   In Wilson's first

13 statement to authorities, he reported that Bolin and Huffstuttler

14 went into the cabin, they argued and/or fought, and then there

15 was a gun shot.   Bolin also asserts the circumstances leading up

16 to the crime suggest that Wilson had some prior connection to, or

17 knowledge of, the marijuana growing operation, and that the

18 prosecutor failed to disclose impeachment evidence.   Bolin seeks

19 documents reflecting interviews and contacts between authorities

20 and Wilson, any information about investigation of Wilson and

21 marijuana cultivation, and documents and/or information

22 connecting Wilson with Ramirez, Halfacre, Huffstuttler, Mincy and

23 the others.

24     The State claims Bolin has not established Wilson talked to

25 authorities when he retrieved his truck and has not established

26 any documents exist.   In any event, the State contends Bolin has

1 enough information to obtain and develop evidence on his own
2 without help from the District Attorney.  Also, the State asserts
3 that a claim about Wilson's involvement with drug activity or
4 connecting him to Ramirez, Halfacre, Huffstuttler, Mincy and the
5 others, was not presented to the state court, and any new facts
6 developed regarding that issue would be unexhausted.

7     The documents sought are relevant to impeachment.  Bolin's
8 request for discovery relating to Jim Wilson is GRANTED.

9     **4.   Discovery Related to West Covina Witnesses.**

10     Counsel for both parties resolved this issue informally
11 during the hearing, stipulating to the issuance of a subpoena to
12 the Los Angeles County law enforcement regarding Bolin and/or
13 Vance Huffstuttler.

14 **D.   Discovery Related to Forensic Issues.**

15     Bolin seeks all notes prepared by the People's Criminalist,
16 Greg Laskowski, regarding this case.  He also seeks information
17 from the autopsies of Steve Mincy and Vance Huffstuttler,
18 including notes, lab test results, and memoranda.

19     The State claims Bolin is merely fishing to see if there is
20 something to use to support his case in the requested discovery.
21 Bolin's mere statement that his forensics expert needs more
22 information – without a declaration from the expert – is
23 insufficient to establish need or good cause.  The State also
24 argues that the claim cannot prevail on the merits because
25 persuasive evidence exists that Huffstuttler was shot outside the
26 cabin in cold blood, not inside the cabin after a fight.

99dp5279.OreDiscovery.wpd                    **9**

1    The documents sought are relevant to the claim that,

2    contrary to the testimony of the State's forensic witnesses, the

3    physical evidence was consistent with the defense theory that

4    Huffstuttler was shot in the cabin during a struggle and later

5    moved outside.  Bolin's request for discovery is GRANTED.

6    **E.    Related Law Enforcement Records.**

7    Bolin seeks background facts of witnesses or others whose

8    credibility and/or possible involvement in marijuana cultivation

9    would have been relevant to the defense of the case.  He seeks

10   law enforcement records for: Huffstuttler, Rebecca Ward, Brent

11   Wilson, Steve Mincy, Ulysses "Chief" Williams, and all records

12   into suspected marijuana cultivation in the Walker Basin area

13   from 1985-89.  Bolin asserts that any evidence Huffstuttler was

14   involved in marijuana cultivation or other criminal activities

15   with Eloy Ramirez, Jerry Halfacre, Jim Wilson, or any of the

16   above individuals, would undermine the prosecution's theory that

17   Bolin killed Huffstuttler for bringing strangers to the pot farm.

18   The State claims that Bolin's allegations of marijuana

19   cultivation are conclusionary and unsupported.  On the merits,

20   the State argues there is no connection between the requested

21   discovery and success of Bolin's case.  Finally, the State argues

22   this request is not supported by the allegations of the petition.

23   Even if Huffstuttler was involved in marijuana cultivation

24   or other criminal activities, the prosecution's theory regarding

25   motive would not necessarily be undermined.  The documents sought

26   lack sufficient connection to the claims asserted in the

1  petition. Bolin's request for discovery is DENIED without
2  prejudice.

3  **F.  Discovery Related to Jury's View of Crime Scene.**

4       The jury viewed the crime scene before deliberations
5  commenced. Bolin was not present. The claim is that
6  conversation among jurors, the judge, and two sheriff's deputies
7  who were trial witnesses, constituted improper taking of
8  testimony outside of court. Because there was some media
9  presence during the jury view, there was also improper influence
10 on the jurors. It's unclear when the media arrived at the jury
11 view. For this claim, Bolin wants third party subpoenas issued
12 to local television stations documenting any media presence at
13 the jury view, including the identities of crew members who were
14 present. Bolin also wants any footage shot by the media. From
15 the District Attorney, he wants any documents reflecting or
16 mentioning the media presence at the jury view.

17      The State contends that Bolin has not proved the media was
18 present, and even if they were present, the claim that they
19 influenced the jurors is speculative. In any event, the State
20 contends that having information about the media presence would
21 not support Bolin's proffered defense, and that Bolin is merely
22 fishing.

23      Bolin's request for discovery is GRANTED as to the
24 television stations. The requested discovery from the District
25 Attorney is duplicative of the open-file review granted above and
26 is DENIED.

99dp5279.OreDiscovery.wpd                **11**

**G.    Discovery Related to "No-Narrowing" Claim.**

Claim BB alleges that the California Death Penalty statute fails to provide a meaningful basis for distinguishing between first degree murders that are and are not eligible for the death penalty pursuant to *Furman v. Georgia*, 408 U.S. 238 (1972). Bolin seeks from the State comprehensive access to case information about every murder from November 7, 1978 to the present which could have been charged as murder in the first degree.  This is the same discovery granted in *Frye v. Woodford*, pending in the Sacramento Division of the Eastern District.

At the hearing, Bolin clarified that his request seeks to allow counsel to participate in the process of the discovery in *Frye*, and asserted that the results of the study can be presented at an evidentiary hearing without discovery.

The State argues that the discovery being obtained in the *Frye* case will not prove Bolin's claim, and that the study conducted in another case might not be relevant here.

It is not clear that this Court has the authority to order discovery from a completely separate case, especially when the information is subject to a protective order, released to a third party, here Bolin's counsel.  Bolin's request for access extends further than the order for shared discovery in another Sacramento Division case, *Riel v. Woodford*.  In *Riel*, discovery was granted similar to discovery granted in *Frye*.  Later, the parties agreed that Riel would not conduct independent discovery to avoid duplication of efforts, and would instead obtain the results of

1  the study and be entitled to rely on the study in support of his

2  petition.  Discovery is not needed in order for Bolin to obtain

3  the results of the study, or to submit the study in support of

4  this claim.  Bolin's request is DENIED without prejudice.

5  **H.    Discovery Related to Lethal Injection.**

6      The parties agreed at the hearing to defer discovery on this

7  issue, subject to possible withdrawal of this claim from the

8  federal habeas petition to allow presentation in a § 1983 action.

9  The Court objected to leaving an unresolved motion on the docket,

10 and counsel for Bolin withdrew this discovery request, without

11 prejudice to raising it again later.

12 **ORDER**

13     Good cause having been shown, Bolin's request for discovery

14 is granted in part as indicated above.  Counsel for Bolin shall

15 set a telephonic status conference to be held within 45 days of

16 the date of this order, to discuss the time line for completion

17 of discovery and the scheduling of the merits briefing and motion

18 for evidentiary hearing.

21 IT IS SO ORDERED.

22 **Dated:    September 6, 2006**          **_____/s/ Anthony W. Ishii_____**
   b64h1h                           **UNITED STATES DISTRICT JUDGE**

99dp5279.OreDiscovery.wpd                **13**