1
2
3
4
5
6                  IN THE UNITED STATES DISTRICT COURT FOR THE

7                          EASTERN DISTRICT OF CALIFORNIA

8

9   PAUL C. BOLIN                        )   Case No. 1:99-cv-5279-LJO
                                         )
10              Petitioner,              )   DEATH PENALTY CASE
                                         )
11     vs.                               )   ORDER MODIIFYING ORDER
                                         )   GRANTING PETITIONER'S
12   MICHAEL MARTEL, as Acting Warden of San )   APPLICATION TO FILE EXHIBITS
     Quentin State Prison,*              )   UNDER SEAL
13                                       )
                Respondent.              )
14   _____ )

15         On March 29, 2010, this Court issued an order granting the application of Petitioner Paul C.

16  Bolin ("Bolin") to file seven exhibits, Exhibits 56, 65, 66, 67, 68, 72, and 94, under seal (doc. 239).  On

17  further review of the exhibits in connection with the Court's evaluation of Bolin's motion for an

18  evidentiary hearing, modification of that order is appropriate with respect to Exhibits 65, 66, 67, 68, 72,

19  and 94.[1]

20         Exhibits 65 through 68 are declarations of members of the defense team, relevant to Bolin's

21  claim that his trial attorneys were constitutionally ineffective (in connection with the stricken jurors, lack

22  of investigation, an undefined defense strategy, and poor performance).  Bolin claims these declarations

23  "address matters which fall within the scope of the attorney client privilege." Bolin states that should

24  the Court find he is entitled to further evidentiary development of his ineffective assistance of counsel

25

26         [1] Exhibit 56 is comprised of certified copies of California Drivers' Licenses of prospective jurors
     peremptorily challenged by the prosecution.  Bolin has alleged ineffective assistance of counsel for his
27  trial attorneys' failure to challenge prosecutorial strikes of Latino jurors.  The basis for sealing these
     documents is to preserve the privacy of the stricken jurors.  The Court will make no modification to the
28  order sealing Exhibit 56.

         *Michael Martel is substituted for his predecessor as Acting Warden of San Quentin State Prison pursuant to Federal
     99dp5279.OModOGrantReq2FileExhibitsUnderSeal.Bol.wpd        1        Rule of Civil Procedure 25(d).

claims and these exhibits (or any of them) are admitted in these proceedings, he will request a protective order pursuant to *Bittaker v. Woodford*, 331 F.3d 715, 718-26  (9th Cir. 2003), to limit use of these documents to the present federal habeas corpus proceedings.  Although Bolin doesn't mention it, *Bittaker* also protects the revelation of attorney work product evidence.  *Id*. at 722, n. 6.

In *Bittaker*, the respondent warden sought to discover the petitioner's trial counsel files to defend against the petitioner's ineffective assistance of counsel claims.  The district court agreed to order the discovery, as limited by a protective order precluding distribution of materials in state court should the federal court grant a writ of habeas corpus and the case retried.  *Id*. at 717.  The Ninth Circuit affirmed, holding that while fairness requires a habeas petitioner to waive the attorney-client privilege when advancing an ineffective assistance of counsel claim, the waiver should not extend beyond the federal proceedings to state court, should the state conviction or sentence be vacated.  *Id*. at 722, 726.  The court instructed that when granting the State's discovery request of trial counsel files, district courts, should "enter appropriate orders clearly delineating the contours of the limited waiver before the commencement of discovery, and strictly police those limits thereafter."  *Id*. at 728.  In discussing what might constitute "appropriate orders," the court mentions protective orders and the "good cause" requirement under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts for granting discovery in the first place.

Looking at the substance of Exhibits 65 through 68, none of these documents discloses attorney-client communications.  There are statements in both trial attorney declarations (Exhibits 65 and 66) to explain what they did (or did not do) and the reasons therefor.  Not surprisingly, given the claims of ineffective assistance of counsel as to lead counsel, Charles J. Soria, his declaration focuses on the juror questionnaire which he drafted to mention the *America's Most Wanted* program featuring Bolin and the change of venue motion from which a final order was never obtained.  Mr. Soria also mentions the strength of the prosecution guilt phase case as the basis for not challenging testimony of the prosecution criminalist.  These statements do not disclose attorney work product or attorney-client communications. There is, however, one portion of Exhibit 65 that should remain sealed, as protected attorney work product under Rule 26(b)(3).  That is paragraph 11.  The content of this paragraph will be redacted when the declaration is re-filed publicly, and will be subject to a protective order on *Bittaker*.

Exhibit 66, the declaration of second counsel William B. Cater, gives a detailed account of Mr. Soria's inadequacies, but also outlines his own deficiencies, largely for not paying attention to Mr. Soria's deplorable performance preparing the case for trial and failing to insist on more preparation for the penalty phase, which he handled after Mr. Soria was relieved.  He does reveal that Mr. Soria had rejected a specific defense theory, that he felt Bolin was not a reliable historian, and that Bolin was aware he was trying bring in a new attorney to present a new trial motion after the penalty verdict.  None of this information breaches the attorney work product rule or invades the attorney-client privilege.

While the allegations in the Petition and arguments in the various briefs do not verbatim reiterate the statements made in Mr. Soria's or Mr. Cater's declarations about their representational decisions, those allegations and arguments paraphrase the attorneys' respective statements as the bases for incompetent professional performance.  Except for paragraph 11 of Mr. Soria's declaration, the Court cannot foresee justification for issuing a protective order to preclude disclosure of the foundation for Bolin's ineffective assistance of counsel claims in the event this Court grants relief.  In any future proceedings, however, none of the attorney statements may be used in an attempt to elicit attorney work product or the substance of attorney-client communications.

Exhibit 67 is the declaration of Roger Ruby, the investigator Mr. Cater retained to investigate mitigation evidence in preparation for the penalty phase trial.  Mr. Ruby tells of the investigation he was able to complete in the limited time allotted (from December 14, 1990 to January 22, 1991) as well as the investigation he would have completed had he been given more time.  The declaration recounts communications with Mr. Cater as to how he came to be retained.  Exhibit 68, the final defense team declaration over the signature of Aaron Chadwick, exposes the inadequacies of Mr. Soria's originally retained investigator, Bruce Binns.  Mr. Chadwick, a former, part-time, untrained investigator working for Mr. Binns avers that he interviewed Bolin twice, but reveals nothing of their conversations.  As with the attorney declarations, the strategic decisions concerning presentation of the mitigation case explained in the declarations of Messrs Ruby and Chadwick *are* the basis for Bolin's present claims that the investigation was insufficient.  In the event the Court were to grant relief on Bolin's ineffective of assistance claims, the inadequacies of the trial  preparation necessarily would be discernible from the manner in which a newly appointed trial counsel conducts the case.

1    Exhibit 72 is a declaration of proffered *Strickland* expert, James Thomson, also in support of

2    Bolin's various ineffective assistance of counsel claims.  As with the declarations of the trial attorneys,

3    Bolin claims he would be entitled to a protective order under *Bittaker* limiting disclosure of the

4    "privileged information" contained in Mr. Thomson's declaration.  While Mr. Thomson's declaration

5    does not reference or contain attorney-client communications, Bolin points out that his statements

6    reference declaration statements made by Bolin's trial counsel, which do recite privileged information.

7    Mr. Thomson's declaration is derivative and no more entitled to a protective order than the declarations

8    of either Mr. Soria or Mr. Cater.  Mr. Thomson does not reveal the content of Mr. Soria's statement in

9    paragraph 11 of Exhibit 65.

10    Finally, Exhibit 94 is comprised of two memoranda written by an employee of the original

11    defense investigator Mr. Binns, documenting that he telephonically contacted one of Bolin's sisters and

12    a cousin in Chicago, who cared for Bolin and expressed willingness to assist in the defense investigation.

13    Mr. Bolin claims these memoranda fall within the scope of the attorney-client privilege.  The contention

14    is without merit.  Nor do the statements in the memoranda reveal attorney work product, other than the

15    fact that potential witnesses were contacted.

16    Except for paragraph 11 of Mr. Soria's declaration (Exhibit 65), the sealing of Exhibits 65

17    through 68, 72, and 94 is unwarranted.  The March 29, 2010 order granting Bolin's request to seal these

18    exhibits is modified.  With Exhibit 65 redacted, these declarations will be filed publicly and referred to

19    in unsealed orders.

20    IT IS SO ORDERED.

21

22    DATE:     March 9, 2012

23                                                    /s/ Lawrence J. O'Neill
                                                     Laurence J. O'Neill
                                                     United States District Judge
24

25

26

27

28