UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL C. BOLIN,<br><br>        Petitioner,<br>  vs.<br><br>KEVIN CHAPPELL, as Acting Warden of San Quentin State Prison,<br><br>        Respondent. | Case No. 1:99-cv-05279 LJO<br><br>DEATH PENALTY CASE<br><br>ORDER GRANTING RESPONDENT'S REQUEST TO MODIFY ORDER ON MOTION *IN LIMINE* REGARDING PETITIONER'S *STRICKLAND* EXPERT |

      This matter is before the Court on the request of Respondent Kevin Chappell, as Acting Warden of San Quentin State Prison, (the "Warden") for modification the October 19, 2012 order to delete characterizations of the Warden's arguments the Court found intentionally or inadvertently misleading. The October 19, 2012 order denied the Warden's motion to exclude testimony from *Strickland*[1] expert, James Thomson, designated by Petitioner Paul C. Bolin ("Bolin"). The request is unopposed.

      The Warden presented three arguments the Court found troubling:

1. He maintained that a *Strickland* expert would not be useful or necessary to the Court in understanding the legal duties of defense attorneys at the time of Bolin's state trial. In support of this proposition, he quoted *Earp v. Cullen*, 623 F.3d 1065, 1075 (9th Cir. 2010): "Expert testimony is not necessary to determine claims of ineffective assistance of counsel." The Warden failed to mention, however, that a *Strickland* expert had testified in the *Earp* case about

---

[1] *Strickland v. Washington*, 466 U.S. 688 (1984).

|   |   |
|---|---|
| 1 | the legal standard of care and that the preclusion concerned proffered evidence that the petitioner |
| 2 | had been prejudiced by the alleged incompetent representation. |
| 3 | 2.   He argued that Mr. Thomson's testimony would be unreliable because he will base his opinion |
| 4 | on ABA Guidelines for the legal standard of care.  In support of this argument the Warden |
| 5 | recited the notable holding in *Bobby v. Van Hook*, 558 U.S. 4, 130 S. Ct. 12 (2009), the high |
| 6 | Court criticized the Sixth Circuit for holding up the ABA Guidelines "not merely as evidence |
| 7 | of what reasonably diligent attorneys would do, but as inexorable commands with which all |
| 8 | capital defense counsel must fully comply." *Id*. at ___, 130 S. Ct. at 17.  He cited *In re Reno*, |
| 9 | 55 Cal. 4th 428, 467 (2012), as holding "that reference to ABA Model Rules are not only |
| 10 | unnecessary but the standards 'are not congruent with constitutional standards for effective legal |
| 11 | representation.'"  Because of Mr. Thomson's reliance on the ABA Guidelines, the Warden |
| 12 | concluded his (Mr. Thomson's) testimony "would be both misleading and uninformative |
| 13 | regarding the relevant issues."  The argument as to *Van Hook* is off the mark because even if the |
| 14 | ABA Guidelines are not "inexorable commands," they are still guides.  Moreover, the high |
| 15 | Court's criticism of the Sixth Circuit was, in part, based on that court's reliance on ABA |
| 16 | Guidelines promulgated 18 years after the petitioner's trial.  The Warden's reliance on *Reno* is |
| 17 | similarly inapposite.  In that case, the state court criticized state habeas counsel, of which Mr. |
| 18 | Thomson was one, for relying on ABA Guidelines as justification for asserting defaulted claims |
| 19 | in a successive petition. |
| 20 | 3.   Finally, the Warden raised Mr. Thomson's credibility, expertise, and competence as an expert, |
| 21 | citing extensive criticism in the *Reno* case about the shortcomings of habeas counsel for |
| 22 | misrepresenting the existence and non-existence of prior allegations in a state habeas petition. |
| 23 | The Warden suggested the catalogue of misdeeds in pleading the cause in *Reno* could carry over |
| 24 | to his testimony as a *Strickland* expert in this case.  The abusive writ practices of Mr. Thomson |
| 25 | and his co-counsel in *Reno*, as practitioners, would have no bearing on Mr. Thomson's |
| 26 | knowledge and ability to testify about legal standards as an expert. |
| 27 | In the memorandum of points and authorities supporting the Warden's present request, he |
| 28 | minimizes any incomplete representation of case law presented in his *in limine* motion and emphasizes |

that his various assertions properly would have been the subject of argument between the parties.. As to the judicial pronouncement in *Earp* that *Strickland* expert testimony is not necessary to determine claims of ineffective assistance of counsel, 623 F.3d at 1075, he argues he never said such expert testimony should be precluded on the issue of legal standard of care. Rather, he points out that this particular topic of *Strickland* expert testimony simply was not challenged in the *Earp* case. The Warden's *in limine* motion, however, did not provide any case-explanatory information or mention that the district court had admitted *Strickland* testimony about the legal standard of care. The Court accepts the Warden's current entreaty that this omission was not intended to mislead. In the future, the Warden should provide a more complete rendition of the authorities upon which he relies and not anticipate that argument from the opposing party will cure any partial presentation.

With respect to reliance on the ABA Guidelines, the Warden now introduces additional cases bearing on whether an expert can be qualified in light of his or her methodology, including reliance on certain assumptions and facts. First, he cites to *United States v. Prime*, 431 F.3d 1147 (9th Cir. 2005), as an example of a case where certain assumptions forming the basis of expert opinion were discussed. *Prime* involved a criminal prosecution for the manufacture of counterfeit securities. The prosecution proffered a handwriting expert and the defendant moved *in limine* to suppress that testimony. *Id*. at 1152. The trial court denied the exclusion motion, finding the methodology of the expert reliable, and the Ninth Circuit affirmed. *Id*. at 1152, 1153, 1154.

Next he cites a Texas District Court opinion involving a civil suit on a promissory note and a collateral guarantee agreement, *Whitney Nat. Bank v. Air Ambulance by B & C Flight*, 516 F.Supp.2d 802 (S.D.Tex. 2007). The specific statement cited from that case is: "Incorrect assumption critical to an expert's opinion makes that opinion unreliable." *Id*. at 817. The designated "experts" in *Whitney Nat. Bank* testified that the deficiency claimed by the plaintiff bank after the sale of the collateral aircraft was unreasonable because the bank failed to fulfill its "duty" to have the aircraft re-certified as airworthy, so as to generate a higher price. In rejecting this testimony, the district judge found no such duty existed and thus that the testimony of the proffered experts could be discounted. *Id*.

The Warden asserts that "ABA Guidelines are not generally accepted in the relevant community to establish performance under the Sixth Amendment," and therefore, consistent with *Whitney*, but in

contrast to *Prime*, Mr. Thomson's opinions should not be accepted. The Warden is mistaken. The Court is interested in understanding capital defense norms at the time of Bolin's trial, whether they are based on ABA Guidelines or other defense-oriented publications. Having that evidence will then inform (not "command") the Court's assessment of the legal competence of Bolin's trial attorneys. As the high Court observed in *Van Hook*, the ABA Guidelines are guides for how reasonably diligent attorneys would conduct a capital defense. Notwithstanding the Warden's continued argument that ABA Guidelines should not even enter into the calculus of Mr. Thomson's testimony, the Court accepts the Warden's sincerity in pressing the point.

The last area of concern for the Warden is the Court's treatment his argument that Mr. Thomson's testimony would lack credibility because the California Supreme Court in *Reno*, 55 Cal. 4th 428, criticized the tactics of Mr. Thomson and is co-counsel in litigating a successive state habeas petition. Because the state court found numerous allegations in the petition to contain false and unsupported allegations about whether the claims contained new facts, additional legal authority, had been raised previously, and had been ruled on previously, the Warden argued Mr. Thomson's credibility was called into question. He argues that since his *in limine* motion in no way obscured the context of the state court's criticism (that is in the context of abuse of the writ), there was no misleading, period. While he now concedes that the relevance and persuasiveness of *Reno* regarding Mr. Thomson's *methodology* was a matter of argument between the parties, the criticisms brought to light in that case are relevant. To illustrate his point about what information an expert relies upon and whether the expert is credible, he cites to a Third Circuit case, *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000).

The dispute over expert testimony in this case centered on admissibility of the testimony of a psychologist/ vocational rehabilitationalist for a slip and fall plaintiff (Elcock). *Id*. at 740. Having lost a motion *in limine* to exclude the proffered expert for lack of qualifications, the defendant (Kmart) moved during trial to exclude the expert's testimony "on the ground that his methodology for rendering vocational disability assessments was unreliable." *Id*. at 744. The defendant argued the expert's method for determining the extent of a person's disability was incapable of being duplicated or tested for validity; rather, it was "an idiosyncratic or subjective judgment." *Id*. at 746. Ultimately, the appellate court vacated the trial court's decision to admit the expert's testimony and remanded for a *Daubert*

hearing[2] to assess the reliability of the expert's methodology. *Id.* at 751. The Warden reprints footnote 8 of the case where the Third Circuit noted that "[t]he relationship between evidence bearing on an expert witness's credibility and a court's analysis of the reliability of that expert's methodology pursuant to its Rule 104(a) fact-finding function is subtle and nuanced, and does not readily admit to the drawing of bright lines." *Id*. at 751, n. 8.

The Warden's citation to *Elcock* is not so much an explanation about why and how he was not misleading the Court, but pressing further his original argument that Mr. Thomson's credibility should be called into question in the present case. Again, the Court rejects this invitation. Expert methodology, as discussed in *Elcock*, simply is not at issue in the present case. Being a *Strickland* expert to testify about the standard of professional competence at the time of Bolin's trial does not trigger a *Daubert* analysis of any discussion about testing or methodology. The conduct of Mr. Thomson and his co-counsel in *Reno* in reasserting previously rejected claims as well as untimely claims that should have been asserted in prior proceedings is not the kind of methodology at issue in *Elcock* that requires assessment under *Daubert*. In the present case, the issue is what Mr. Thomson knows about the legal standard of care at the time of Bolin's trial. His qualification for that testimony is his practice as a defense lawyer and capital specialist in California at the relevant time. The error of Mr. Thomson and his co-counsel in *Reno* was to over-paper the state supreme Court with procedurally barred claims. This is hardly a "methodology" with in the *Daubert* and *Kumho Tires*[3] line of cases. It's an abusive *practice*. And, though the California Supreme Court had some harsh language for the attorneys representing Mr. Reno about their litigation practices as counsel of record, in the present case Mr. Thomson's role is solely as an expert, not a practitioner.

In as much as the Warden has reasserted his argument about Mr. Thomson's credibility, and provided additional legal authority for his arguments, the Court is convinced about his sincerity in raising the issue originally in his *in limine* motion.

---

[2] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 479 (1993)

[3] *Kumho Tires Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)

In light of the foregoing, the Court grants the Warden's motion to modify the order filed October 19, 2012 regarding his motion *in limine*. The Clerk of the Court is directed to strike that order (doc. 291), and file the amended order presented herewith.

IT IS SO ORDERED.

Dated:    November 30, 2012

/s/ Lawrence J. O'Neill
Lawrence J. O'Neill
United States District Judge