UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL C. BOLIN,<br><br>        Petitioner,<br><br>vs.<br><br>KEVIN CHAPPELL, as Acting Warden of San Quentin State Prison,<br><br>        Respondent. | Case No. 1:99-cv-05279 LJO<br><br>DEATH PENALTY CASE<br><br>ORDER EXCLUDING JURY SELECTION EXPERTS FROM TESTIFYING AT EVIDENTIARY HEARING |

On November 16, 2012 the parties filed their expert witness disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2). Petitioner Paul C. Bolin ("Bolin") filed two statements, one by *Strickland* expert James S. Thomson and one by jury selection expert Neil Vidar, Ph.D. Respondent Kevin Chappell, as Acting Warden of San Quentin State Prison (the "Warden"), filed one statement, by jury selection expert Karen Ginn, Ph.D. The Court has read the reports of both jury experts and concludes their testimony shall be excluded at the anticipated March 18, 2013 evidentiary hearing as unreliable. Fed.R.Evid.702. Both reports evince opinions which rely on speculation and wholly subjective analyses.

Karen Ginn, Ph.D.

Dr. Ginn is psychologist and current president of Verdix Jury Consulting, Inc. In her report, she cites the law on venue factors and provides a five-page summary of the facts. Neither the recitation of case law nor the summary of the voir dire in Bolin's trial requires expertise. Her analysis section consists of four and one-half pages of subjective views of the trial judge's clarity, speculative discussions about the effect that a change of venue would have on the Kern County community and the community to which venue would be transferred (if venue had been transferred), speculative comments about the

1  trial attorneys' motives (such as their perceived strategies), and speculation about whether the chosen
2  jurors were better than the ones Bolin would have secured had trial court granted a change of venue.
3  Neil J. Vidar, Ph.D.
4       Dr. Vidar is a psychologist who teaches at Duke University School of Law.  He is not a law
5  professor. He explains how he would have counseled Bolin's attorneys during jury selection had he been
6  retained as an expert consultant, that is, renew the motion for change of venue at the culmination of voir
7  dire because the prospective jurors demonstrated partiality in the responses, in spite of the attorneys and
8  trial judge having been assured by those same jurors to the contrary.  He gives his subjective view that
9  the America's Most Wanted (AMW) episode about Bolin blended fact with fiction, portraying Bolin
10 negatively and the victims sympathetically.  No court needs an expert to render such an opinion; the
11 evidence is viewable. Dr. Vidar states that prospective jurors would find it difficult to separate primary
12 impressions drawn from the dramatization and the subsequent evidence at trial.  He points to
13 confirmatory studies finding that "the side of an issue presented first will very often cause subsequent
14 information to be filtered through that first impression."  White this *might* be true, there is nothing of
15 a concrete nature to know whether it is true with respect to the individuals who sat on Bolin's jury.  He
16 speculates that the necessarily partial prospective jurors who saw the AMW program "likely" influenced
17 other prospective jurors in the jury assembly room prior to voir dire.  By factoring in juror questionnaires
18 that are not available, he further speculates that AMW exposure rate was as high as 62% of the venire.
19 He criticizes Bolin's attorneys in drafting the questionnaire to include information about AMW, thereby
20 "push[ing] at least some of the jurors in a particular direction, namely to favor the prosecution over the
21 defense."  In the Court's view, it would have been reversible error to have ignored AMW and not asked
22 questions about it.
23      Next, he speculates that Juror Lee "felt she had to concede she had no biases, even if that was
24 not her state of mind."  He renders a subjective opinion that the jurors were "coached by the judge or
25 the prosecutor into saying they could be fair."  Finally, he speculates that "the Bolin jury began
26 deliberations with a majority of members biased by these [mentioned] influences, and they very likely
27 contaminated the remaining jurors during deliberations."
28

<u>Discussion</u>

The opinions of both experts will be of no use to the Court in its fact finding process. Specifically, under Federal Rule of Evidence 702(a) the experts' specialized knowledge will not assist the Court understand the evidence or determine facts at issue. Nor is the proposed testimony the product of reliable principles. Fed.R.Evid.702(c). Finally, neither expert has reliably applied principles to the facts of the case. *Id*., 702(d).

The Court therefore exercises its gatekeeping function under *Daubert v. Merrill Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993) to preclude the testimony of both parties' jury selection experts. While the main purpose of *Daubert* and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999) is to protect jurors from being swayed by dubious expert testimony, even in bench trials (or evidentiary hearings), the gatekeeping role must be fulfilled. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (holding that although the court in a bench trial need not make reliability determinations before evidence is presented, "the determinations must still be made at some point"). The Seventh Circuit further notes that both the Tenth and the Federal Circuits have held the *Daubert* requirement of reliability and relevancy apply to bench trials. *Id.*, citing *Attorney Gen. Of Okla. v. Tyson Foods, Inc.* 565 F.3d 769, 779 (10th Cri. 2009); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed.Cir.2002). Since the Court now has before it the experts' respective reports, there is no need to hear their testimony before making the reliability decision. Their testimony is precluded.

IT IS SO ORDERED.

Dated:   December 19, 2012

/s/ Lawrence J. O'Neill
Lawrence J. O'Neill
United States District Judge