UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL C. BOLIN,<br><br>   Petitioner,<br><br>vs.<br><br>KEVIN CHAPPELL, as Acting Warden of San Quentin State Prison,<br><br>   Respondent. | Case No. 1:99-cv-05279 LJO<br><br>DEATH PENALTY CASE<br><br>ORDER DENYING WITHOUT PREJUDICE MOTION TO DEPOSE PETITIONER AND GRANTING MOTION FOR PRODUCTION OF DOCUMENTS<br><br>HEARING DATE OF JANUARY 7, 2013 VACATED |

This matter is before the Court on the motion of Respondent Kevin Chappell, as Acting Warden of San Quentin State Prison (the "Warden") for leave to depose Petitioner Paul C. Bolin ("Bolin") and for production of specified documents in his possession or control.

**I. The Warden's Argument**

The Warden brings this motion pursuant to Rule 6(a) of the Rules Governing § 2254 Cases providing that discovery in habeas corpus actions may be granted only upon a showing of good cause. In his argument, he focuses on his need to ascertain the extent and content of Bolin's input regarding particular jurors and jury selection considerations discussed with his attorneys during voir dire. He maintains revelation of this input will inform the determination of whether Bolin's trial attorneys were ineffective for not renewing the change of venue motion upon competition of voir dire.

In support of the proposition that Bolin actually did provide such input, the Warden references two handwritten notations indicating Bolin's juror preferences, namely that he "liked" both James Iseminger and Donald Newberry (both, alternate jurors). Because Bolin was present and participated

in jury selection, the Warden maintains his deposition is essential for him to prepare for the March 18, 2013 evidentiary hearing, Specifically, at the requested deposition the Warden will pose question to elicit the following:

>   1.  Whether Bolin can provide any insight into the reasons of trial counsel for retaining or challenging particular jurors including, but not limited to, how counsel considered and weighed a juror's exposure to pretrial publicity;
>
>   2.  What, if any, discussions Bolin had with counsel regarding jury selection of the change of venue motion;
>
>   3.  What, if any, additional information trial counsel had from Bolin in selecting a jury and thereafter declining to renew a change of venue motion.

The good cause component of discovery is further informed by "need." The Warden points out that in the declarations of Bolin's trial attorneys, both have averred they could not recall the jury selection process. Accordingly, Bolin is the only trial player who might still have the foregoing information.

The Warden additionally requests documents in Bolin's position relevant to jury selection. The document production request includes the same class of documents potentially in the possession of others and over which Bolin retains possession or control.

## II.    Controlling Legal Principles

Matters of strategy as to how to proceed at trial are solely within the sphere of decision making by a trial attorneys after consultation with the defendant. This concept is explained in Standard 4-5.2 of the *ABA Criminal Justice Standards: Prosecution and Defense Function*, 3d ed. (1993). Standard 4-5.2 provides in its entirety:

> (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:
> (i) what pleas to enter;
> (ii) whether to accept a plea agreement;
> (iii) whether to waive jury trial;
> (iv) whether to testify in his or her own behalf; and
> (v) whether to appeal.
>
> (b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to

> call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.
>
> (c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.

Although last updated in 1993, these ABA standards currently are cited as guides for reviewing attorney performance by the United States Supreme Court and the Ninth Circuit. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010) (citing standard 4-5.1(a) regarding defense counsel's duty to advise about the risk of deportation ); *Howard v. Clark*, 608 F.3d 563, 570 (9th Cir. 2010) (citing standard 4-4.1(d) regarding defense counsel's duty to conduct a prompt investigation of the circumstances of the case). In *Gonzalez v. United States*, 553 U.S. 242 (2008), the high Court explains the rationale for relegating tactical decisions to attorneys:

> Giving the attorney control of trial management matters is a practical necessity. "The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois,* 484 U.S. 400, 418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). The presentation of a criminal defense can be a mystifying process even for well-informed laypersons. This is one of the reasons for the right to counsel. *See Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); ABA Standards for Criminal Justice, Defense Function 4–5.2, Commentary, p. 202 (3d ed. 1993) ("Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance, and an explanation to any but the most sophisticated client would be futile"). Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial. These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is designed to promote. In exercising professional judgment, moreover, the attorney draws upon the expertise and experience that members of the bar should bring to the trial process. In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); *see also Tollett v. Henderson,* 411 U.S. 258, 267–268, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *cf.* ABA Standards, *supra,* at 202 ("Every experienced advocate can recall the disconcerting experience of trying to conduct the examination of a witness or follow opposing arguments or the judge's charge while the client 'plucks at the attorney's sleeve' offering gratuitous suggestions"). To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical.

*Id.* at 249-50.

Subsection (b) of Standard 4-5.2 identifies "what jurors to accept or strike [and] what trial motions should be made" as strategic decisions for the trail attorney to make.

**III.    Discussion**

The Court notes, with disappointment, that the Warden failed to mention or acknowledge the foregoing principles.

While decisions about jury selection and change of venue motions are for the trial attorney to make, client input is not irrelevant. Reasonable tactical decisions most certainly can and should be informed by input from the client. The ultimate decision, however, is the responsibility of the attorney.

Should the Court grant leave to take Bolin's deposition, the most the Warden can hope to gain is that Bolin will say he told his attorneys which prospective jurors he liked or disliked and which he wanted selected. This would add to the information cited by the Warden about Bolin's favorable impression of Alternate Jurors Iseminger and Newberry. Standing alone, however, this information would not be helpful to the Court in assessing attorney performance regarding renewal of motion for the change of venue. What is needed is an explanation about how the attorneys regarded Bolin's input, specifically as to jury selection, and if that is beyond the attorneys' respective recollection, then generally throughout the trial proceedings.

On November 29, 2012 the Court entered an order granting the Warden leave to conduct the depositions of Bolin's trial attorneys, Charles Soria and William Cater. (Doc. 303.) While the fact of these depositions is mentioned in passing as a footnote in the Warden's motion, the Warden reveals no information about whether the depositions have occurred or even whether they have been noticed. The Court has no way of knowing the attorneys' respective positions on Bolin's input in the jury selection process, or how that input influenced the attorneys' decision not to review the change of venue motion.

On the present showing, even without an opposition from Bolin's attorneys, the Court finds the "good cause" requirement of Rule 6(a) of the Rules Governing § 2254 Cases to be lacking. The motion for leave to conduct Bolin's deposition is therefore denied without prejudice.

It may well be that the attorneys' decision about the jury selection process may be refreshed by the deposition process and reference to trial notes. The Warden also could ask the attorneys about Bolin's input generally throughout the trial, and specifically during the jury selection process.

In contrast, the Court finds the Rule 6(a) "good cause" requirement is satisfied as to the Warden's document production request. If Bolin has any of the materials requested, they should be produced.

They very well may prove helpful to the Warden when conducting the depositions of Mr. Soria and Mr. Cater (if they exist).

**IV.      Additional Related Matter**

The Court takes this opportunity to clarify the effect of the Warden's continued and renewed objections to the declarations of Bolin's trial attorneys. In the current motion the Warden cites to these declarations as providing support for the proposition that Bolin is the only source of information about his role in the jury selection process. The Warden then restates objections to the declarations because they were not presented to the California Supreme Court and Bolin has not explained why the declarations could not have been developed and presented in state court. *See* Motion (doc. 308) at p. 5, n. 1. The Court already has ruled on these issues.

The first objection relates to the application of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). *Pinholster* precludes a district court from considering evidence not presented in state court when making the determination as to whether the state court decision was unreasonable under 28 U.S.C. § 2254(d)(1). *Id.* at 1398. The rationale for this holding is that "review under § 2254(d)(1) focuses on what the state knew and did." *Id*. 1399. The second objection relates to the diligence requirement under § 2254(e)(2), which precludes a federal court from allowing further fact development (via evidentiary hearing or record expansion) unless it first determines that the petitioner exercised diligence in trying to develop the factual basis of the claim. *Williams (Michael) v. Taylor*, 529 U.S. 420, 435 (2000) (holding that subsection (e)(2) precludes an evidentiary hearing when the failure to develop the factual basis of a claim is due to a "lack of diligence or some greater fault attributable to the prisoner or the prisoner's counsel").

Both of these legal concepts were outlined, in detail, in the order granting Bolin a limited evidentiary hearing and record expansion as to Claim C2 of his petition. (Doc. 277.) With respect to the trial attorneys' respective declarations, specifically, the Court stated it was *not* considering that evidence in determining the state court's unreasonableness in denying Bolin further evidentiary development in state habeas proceedings, explicitly because *Pinholster* proscribed it. The Court further found that Bolin's prior attorneys *had* exercised diligence under § 2254(e)(2). The Warden raised the diligence argument again in his motion to exclude Bolin's *Strickland* expert from testifying, and the

1  Court reiterated the text of the evidentiary hearing/ record expansion order in the order denying this
2  preclusion request. (Doc. 305.)

3      At this stage of the litigation, the Court has granted an evidentiary hearing and authorized record
4  expansion. The content of the trial attorneys' declarations did not figure into this decision. Because the
5  Court already has determined that the state court was unreasonable under § 2254(d)(1) for not granting
6  Bolin the opportunity to develop additional evidence in state court, all relevant, reliable evidence the
7  parties offer to address the merits of Claim C2 now may be offered, *including* the trial attorneys'
8  declarations. Any objection the Warden may have to the Court's consideration of those declarations,
9  from the entry the evidentiary hearing order forward, is ill-conceived and cumulative. Likewise the
10 diligence issue under § 2254(e)(2) is settled. It's clear the Warden disagrees with the Court's decision,
11 as he has argued the position two times since the decision was made. To the extent the Warden seeks
12 to preserve his objection to the Court's rulings, he has fulfilled this goal. The matter need not and
13 should not be raised again.

14

15 IT IS SO ORDERED.

16 Dated:     December 20, 2012

17                                                  /s/ Lawrence J. O'Neill
                                                        Lawrence J. O'Neill
18                                           United States District Judge